## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERIKLI S. Z.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:20-CV-00812-BAH-RMM |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Perikli S. Z. ("Plaintiff" or "Mr. Z."), appearing *pro se*, seeks the reversal of a decision of the Commissioner of the Social Security Administration ("the Commissioner") in which an Administrative Law Judge ("ALJ") suspended Mr. Z.'s Retirement Insurance Benefits ("RIB") after finding that the Department of Homeland Security ("DHS") notified the Social Security Administration ("SSA") that Mr. Z. had been removed[2] from the United States. *See generally* Complaint, ECF No. 1. Mr. Z. contends that the ALJ erroneously determined that Mr. Z. was removed, as opposed to finding that Mr. Z. voluntarily departed from the United States, and that his disability benefits should not have been suspended. *Id.* at *2.

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Mem. from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt., to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf.

[2] Mr. Z.'s removal from the United States is referred to as both his "deportation" and "removal" throughout the Administrative Record and the parties' briefing. For consistency and in keeping with the most current terminology, the undersigned will use the term "removal" in this Report and Recommendation, unless quoting specific language in the record or referencing specific documents that include "deportation" in the title.

Then-Chief Judge Beryl A. Howell referred this matter to the undersigned for full case management including the preparation of a Report and Recommendation pursuant to Local Civil Rule 72.3.  *See* Order, ECF No. 5.  Pending before the undersigned are Mr. Z.'s Motion for Judgement of Reversal, ECF No. 22, and the Commissioner's Motion for Judgment of Affirmance, ECF No. 24.  Having considered the parties' submissions[3] and the Administrative Record,[4] and for the reasons set forth below, the undersigned recommends that the Court DENY Mr. Z.'s Motion for Reversal and GRANT the Commissioner's Motion for Affirmance.

## BACKGROUND

I.   **Factual and Procedural Background**

A.  *Mr. Z.'s Initial Application*

Mr. Z. applied to the SSA for RIB on November 25, 2008.  *See* AR 76.  His application was approved on May 3, 2010, but the Notice of Award stated that his benefits would be suspended beginning in April 2010 because he had been removed from the United States.  *See* AR 108.  Mr. Z. filed a request for a hearing in which he raised two claims.  *See* AR 114–15. First, he claimed that he voluntarily departed from the United States, and was not removed, and that his benefits should not have been suspended ("removal issue").  *Id.*  Second, he challenged the calculation of the amount of benefits he was awarded ("benefit calculation issue").  *Id.*  The

---

[3] The following filings and documents are relevant for this Report and Recommendation: Compl., ECF No. 1; Pl.'s Mot. J. Reversal ("Pl.'s Mot."), ECF No. 22; Def.'s Mot. J. Affirmance, ECF No. 24; Def.'s Mem. in Supp. of Mot. J. Affirmance and Opp'n to Pl.'s Mot. ("Def.'s Mem."), ECF No. 25; Pl.'s Opp'n to Def.'s Mot. J. Affirmance ("Pl.'s Reply"), ECF No. 26.

[4] References to page numbers in the Administrative Record ("AR"), ECF No. 14, are to the bold page numbers provided in the top right-hand corner of each page of the AR.  Page citations to documents in the record other than the AR refer to the document's original pagination, unless the page is designated with an asterisk (*e.g.*, *1), in which case the reference is to the pagination assigned by PACER/ECF.

request for a hearing was dismissed and his case was remanded for reconsideration.  *See* AR 118.
On reconsideration, the Commissioner affirmed the initial decision, finding that the SSA's
records indicated that Mr. Z. was removed from the United States on December 7, 2008, and he
was therefore not eligible to receive benefits until he was re-admitted into the United States as a
lawful permanent resident.  *See* AR 127–28.  The Commissioner also affirmed the decision
regarding the calculation of the amount of benefits Mr. Z. could receive for the period before he
was removed.  *See* AR 128–29.  Mr. Z. timely filed a request for a hearing before an ALJ, again
challenging both issues.  *See* AR 130–133.

### B.  ALJ Hearing, Decision, and Appeals Council Decision on Removal Issue

On April 4, 2012, ALJ Jay Cohen conducted a hearing on Mr. Z.'s case ("April 2012 ALJ
Hearing").  *See* AR 52–74.  Mr. Z. waived his right to appear at the hearing, and submitted an
affidavit designating Abdyl Koprencka as his representative, in which he stated that he was
"obligated" to leave the U.S. on December 8, 2012.  *See* AR 54, 86.

Mr. Z.'s uncle, Larry Jance, testified first.  *See* AR 57–52.  He stated that Mr. Z. came to
the United States with a "visitor's visa," and after applying for and being granted one extension,
he did not apply for another extension because "he was afraid of being denied."  AR 58.  Mr.
Jance testified that Mr. Z. applied for asylum and received work authorization.  *See* AR 59, 61.
He explained that Mr. Z.'s request for asylum was denied, and Mr. Z. was subject to "[v]oluntary
deportation."  AR 60.  He further elaborated that Mr. Z. "placed a bond after" his immigration
hearing and then "paid for his own fare going back."  *Id.*  Mr. Jance explained that he could not
say whether Mr. Z. was authorized to work during his entire stay in the United States, because he
"[doesn't] know the rules."  AR 62.  He explained that Mr. Z. "worked very hard," paid his taxes
in full, and did not commit any crime . . . [t]hen he was deported."  AR 60.

3

Mr. Z.'s cousin, John Jance, testified next.  *See* AR 62–63.  John Jance testified that Mr. Z. "came in legally," but when a renewal came "he was worried" and "that may have been the genesis of where the problem began."  AR 64.  He testified that Mr. Z. "had a legal job," paid taxes, and was never arrested "[a]s far as I know."  AR 63.

Lastly, Mr. Z.'s colleague Foma Arehoba testified.  *See* AR 67.  He testified that Mr. Z. had authorization to work in the United States and paid "every year to renew" the authorization.  AR 69.  After Mr. Z.'s asylum claim was denied, he continued to work and renew his authorization "[u]ntil the end."  *Id.*  He further testified that when Mr. Z. left the country "he paid for the ticket himself, $500."  AR 71.  He explained that Mr. Z. worked hard every day "without missing a day of work" because he "wanted to put his children through college."  AR 69–70.

On July 2, 2012, the ALJ issued an unfavorable decision ("July 2012 ALJ Decision"), finding that DHS notified SSA that Mr. Z. was ordered to be removed, and he was thus not eligible for benefits.  *See* AR 145.  He found that Mr. Z.'s "presence in the country became illegal in 1999, and in that year he was ordered to leave the United States voluntarily."  AR 144.  The ALJ explained that "[t]he evidence establishes that the date of [Mr. Z.'s] order of deportation was December 7, 2008" and that he "immediately left this country for England."  *Id.*  He concluded that the SSA was made aware of Mr. Z.'s removal order, and rightly suspended his benefits under section 202(n) of the Social Security Act ("the Act").  *Id.*

The ALJ found that the record could not "establish any credible evidence" that Mr. Z. left the United States voluntarily.  *Id.*  "Instead, what is of record is the December 2008 deportation order and [Mr. Z.'s] near simultaneous departure for England."  *Id.*  He also emphasized that "any private decision to leave this country voluntarily takes no precedence of the deportation order."  *Id.*  The ALJ also found that Mr. Z. applied for asylee status and was denied by DHS,

and that he had not been legally readmitted to the United States.  *See* AR 144.  The ALJ did not

address Mr. Z.'s claim that his benefits were calculated incorrectly.  *See* AR 140–45.

Mr. Z. timely appealed the ALJ's decision.  *See* AR 148.  The Appeals Council issued a

decision on March 20, 2014 ("March 2014 Appeals Council Decision"), finding that "[t]he

evidence supports the [ALJ's] decision regarding [Mr. Z.'s] ineligibility for benefits," and citing

Mr. Z.'s own statement in his affidavit that he was "obligated" to leave the country.  AR 153.

Further, the Appeals Council examined the relevant provisions of the Immigration and National

Act ("INA") and found that, because of the statutory "penalty" for failing to "voluntarily" depart,

Mr. Z.'s "departure was mandatory, even if it was labeled as 'voluntary.'"  *Id.*

The Appeals Council partially affirmed the ALJ's ruling in a decision titled "Notice of

Order of Appeals Council Remanding Case to Administrative Law Judge."  AR 150–54.

Although the Appeals Council affirmed the ALJ's decision on the removal issue, it pointed out

that the ALJ failed to address the benefit calculation issue, and remanded back to the ALJ for

further findings on that issue.  *Id.*  Nowhere in the decision was Mr. Z. advised that this was the

SSA's final decision on the removal issue, nor was he informed about his right to seek judicial

review of the decision.

### C.  *Subsequent Proceedings on the Benefit Calculation Issue*

On June 20, 2014, the SSA sent Mr. Z. a Notice of Hearing which clarified that the

upcoming hearing would be limited to the benefit calculation issue.  *See* AR 158–59.  The

hearing took place on July 23, 2014 before ALJ Jay Cohen.  *See* AR 32.  Abdyl Koprencka again

represented Mr. Z.  *Id.*  The ALJ told Mr. Koprencka at the hearing that removal "[i]s not an

issue" because the Appeals Council "did not send that back."  AR 45.  He emphasized that "[t]he

only issue" concerned the amount of benefits owed before Mr. Z. left the United States, and that

the immigration "issue is over."  AR 46.  Mr. Z. could not be reached by telephone during this

hearing, so a subsequent ALJ hearing was scheduled and took place on October 2, 2014.  *See* AR

20–29.  During that hearing, at which Mr. Z. did appear via telephone, the ALJ explained that

"[t]he issue of deportation has already been decided" and "affirmed by the Appellate

Authorities."  AR 24.  Following the hearings, the ALJ issued an unfavorable decision on the

benefit calculation issue ("February 2015 ALJ Decision").  *See* AR 173.  Because the March

2014 Appeals Council Decision instructed the ALJ to only consider the benefit calculation issue,

he did not analyze the removal issue; instead the ALJ noted in the "Evaluation of the Evidence"

section that the July 2012 ALJ Decision "found that the claimant's benefits were lawfully

terminated because he was subject to a deportation order."  AR 181.

Mr. Z. requested review of the February 2015 ALJ Decision, *see* AR 187, and the

Appeals Council vacated the decision and remanded—this time to a different ALJ—for further

consideration of the benefit calculation issue ("August 2017 Appeals Council Decision").  *See*

AR 192–197.  On September 24, 2018 Mr. Z. received a favorable decision from the new ALJ on

the benefit calculation issue ("September 2018 ALJ Decision").  *See* AR 6–16.  Once again,

because the ALJ was only instructed to consider the benefit calculation issue, the September

2018 ALJ Decision did not analyze the removal issue but instead cited the July 2012 ALJ

Decision and March 2014 Appeals Council Decision's analysis of that issue.  *See* AR 9–16.  In

the "Jurisdictional and Procedural History" section, the ALJ explained that the July 2012 ALJ

Decision "upheld the decision to terminate benefits due to the deportation of the claimant."  AR

9.  In the "Evaluation of the Evidence" section, the ALJ explained that the March 2014 Appeals

Council Decision "found that the ALJ's decision was correct regarding the termination of

benefits" and remanded for further consideration of the benefit calculation issue.  AR 14.  In the

"Findings" section, the ALJ found that Mr. Z. "was [] deported."  AR 16.

### D. *Mr. Z.'s Request for Reconsideration of the Removal Issue and Appeals Council Decision*

On November 14, 2018 Mr. Z. filed a Request for Review of Hearing Decision/Order ("November 2018 Request for Review"), arguing that "[t]he decision to terminate [his] pension [was] wrong and flawed." AR 218. He requested "a review to reopen and review the decision for termination of [his] pension," again asserting that he left the United States voluntarily and was not removed. AR 221.

The Appeals Council responded on January 27, 2020 ("January 2020 Appeals Council Decision"), denying Mr. Z.'s request to reopen the decision suspending his benefits because there was "no clerical error in that decision or error on the face of the evidence that was considered when the decision was made." AR 3–4. The Appeals Council further noted that Mr. Z. did not have a right to judicial review of the denial of his request to reopen. *See* AR 4. However, the decision also stated that Mr. Z. did have the right to judicial review of the September 2018 ALJ Decision, included information about how to file a civil action in federal court, and instructed Mr. Z. that he had 60 days to do so. *See* AR 1–3. This information was not contained in the March 2014 Appeals Council Decision on the removal issue. *See* AR 150–54.

### E. *The Instant Litigation*

Mr. Z. subsequently filed this civil action, requesting that the Court reverse the Commissioner's decision to suspend his retirement benefits and award him benefits from the date of suspension through the present day. *See* Compl. at *4. After Mr. Z. filed his Motion for Reversal, *see generally* Pl.'s Mot., the Commissioner filed a cross motion requesting that the Court affirm the Commissioner's decision. *See generally* Def.'s Mem. The Commissioner argues that the Court does not have jurisdiction over this matter because SSA denials of requests to reopen a decision are not subject to judicial review; in the alternative, the Commissioner

asserts that even if jurisdiction existed, the ALJ properly suspended Mr. Z.'s benefits, and the Appeals Council properly denied his request to reopen the decision. *Id.* at 3–4.

## LEGAL STANDARD

### I.   Prerequisites for Judicial Review of SSA Decisions

The Social Security Act, 42 U.S.C. § 405(g), permits a plaintiff to seek judicial review, in the federal district court, of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 206 (D.D.C. 2017). The SSA application and appeals process includes four steps before judicial review is permitted. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). First, the applicant files a claim with the SSA. *See* 20 C.F.R. § 404.603. Second, if the claim is denied, the applicant is permitted to request administrative reconsideration within sixty days. *Id.* § 404.909. Third, if the request for reconsideration is unsuccessful, the applicant may ask for an evidentiary hearing before an ALJ. *Id.* § 404.930. Fourth, if the ALJ does not find in favor of the applicant, the applicant may appeal the decision to the SSA's Appeals Council. *Id.* § 404.968. Finally, once all those steps are exhausted, if the applicant has not received a favorable decision, he may file a civil claim in federal court seeking judicial review within 60 days of receiving notice of the Appeals Council's decision. *Id.* § 404.981.

Only final decisions of the Commissioner are subject to judicial review. *See* 42 U.S.C. § 405(g). The term "final decision" is undefined in the Act, and "its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975). The regulations differentiate between "initial determinations," which are subject to judicial review, and "actions that are not initial determinations," which are not reviewable. *See* 20 C.F.R. §§ 404.902–03. A determination about a claimant's "entitlement to benefits" is reviewable, *id*. §

404.902, but a denial of a "request to reopen a determination or a decision" is not.  *Id*. § 404.903;
*see also Califano v. Sanders*, 430 U.S. 99, 107–08 (holding that judicial review of decisions by
the Commissioner denying a request to reopen a case is usually not permitted).  There is a
narrow exception to this rule—when a constitutional question is presented, judicial review of the
Commissioner's denial of a request to reopen a case is appropriate.  *Califano*, 430 U.S. at 109.

## II.    Substantive Review of Social Security Administration Rulings

The court must uphold the Commissioner's determination if it "is based on substantial
evidence in the record and correctly applies the relevant legal standards."  *Butler v. Barnhart*,
353 F.3d 992, 999 (D.C. Cir. 2004); *see* 42 U.S.C. § 405(g).  The substantial evidence standard
of review is "highly deferential to the agency fact-finder" and "require[es] only such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rossello ex
rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (quoting *Pierce v. Underwood*, 487
U.S. 552, 565 (1988)) (internal quotation marks omitted); *see also Richardson v. Perales*, 402
U.S. 389, 401 (1971); *Butler*, 353 F.3d at 999.  The standard requires more than a scintilla [of
evidence], but can be satisfied by something less than a preponderance of the evidence."  *Butler*,
353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir.
2003)) (internal quotation marks omitted).

Notwithstanding the deferential nature of the standard, courts must give the record
"careful scrutiny" and "determine whether the Secretary, acting through the ALJ, has analyzed
all evidence and has sufficiently explained the weight he has given to obviously probative
exhibits."  *Sims v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (citations and internal
quotation marks omitted).  "A reviewing court should not be left guessing as to how the ALJ
evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to

9

explain sufficiently the weight he has given to certain probative items of evidence." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009); *Simms*, 877 F.2d at 1050 (quoting *Stewart v. Sec'y of Health, Educ., and Welfare of the U.S.*, 714 F.2d 287, 290 (3d Cir. 1983)) (explaining that the court must determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits") (internal quotation marks omitted).  However, the court "may not reweigh the evidence and replace the [Commissioner's] judgment regarding the weight of the evidence with its own." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32 (D.D.C. 2014) (quoting *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005)) (alteration in original) (internal quotation marks omitted); *Butler*, 353 F.3d at 999.

## DISCUSSION

### I.  Mr. Z.'s Complaint is Subject to Judicial Review

Before proceeding to the merits of Mr. Z.'s claims, the undersigned must first determine whether Mr. Z. has timely challenged a reviewable decision of the Commissioner.  As outlined above, Mr. Z.'s claims were reviewed at numerous levels of the SSA in a series of rulings.  The procedural history before this litigation commenced includes: (1) the July 2012 ALJ Decision, finding Mr. Z. ineligible for benefits due to his removal; (2) the March 2014 Appeals Council Decision, partially affirming the July 2012 ALJ Decision and remanding only for further findings regarding the calculation of benefits; (3) the February 2015 ALJ Decision, which resolved the benefit calculation issue unfavorably to Mr. Z. and did not revisit the removal issue; (4) the August 2017 Appeals Council Decision, vacating and remanding the February 2015 ALJ decision for further consideration of the benefit calculation issue; (5) the September 2018 ALJ Decision, which resolved the benefit calculation issue in Mr. Z.'s favor and repeated but did not substantively examine the prior ALJ's conclusion regarding Mr. Z's removal and eligibility for

benefits; and (6) the January 2020 Appeals Council Decision denying Mr. Z.'s request to reopen the September 2018 ALJ decision.  The Commissioner contends that this appeal challenges only the January 2020 Appeals Council Decision, and thus is not judicially reviewable.  *See* Def.'s Mem. at 10–11.  The Commissioner is correct that Appeals Council rulings declining to reopen an earlier ALJ decision generally are not appealable to federal district courts, absent a constitutional challenge that is not presented here.  *See* 20 C.F.R. §§ 404.902, 903; *Califano*, 430 U.S. at 107–09.  However, as discussed below, the record does not support such a narrow reading of the scope of Mr. Z.'s complaint.

Mr. Z.'s complaint does not focus solely on the Appeals Council's denial of his request to reopen his case.  He ties the timeliness of his complaint to the January 2020 Appeals Council Decision, noting that the Commissioner refused to reopen his case, and that his appeal was filed within 65 days of that decision.  *See* Pl.'s Mot. at 1.[5]  However he also asserts that the July 2012 ALJ Decision and an October 2014 ALJ decision[6] were "biased and unfair."  *Id.* at 3.  He further notes that the September 2018 ALJ Decision partially overturned the earlier ALJ rulings.  *Id.* With respect to the merits, he contends that the SSA erroneously concluded that he had been removed when in fact he had left the country voluntarily.  *Id.* at 2.

Because Mr. Z. is a *pro se* litigant, his complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429

---

[5] Mr. Z. appears to calculate the deadline for filing as "within 60 days of the date of that decision . . . plus five days after."  Compl. at *1.  His complaint was filed 57 days after the January 2020 Appeals Council Decision was issued.

[6] No ALJ decision was issued in October 2014.  The hearing held in October 2014 underpins the February 2015 ALJ Decision.

U.S. 97, 106 (1976) (citation omitted)); *see also Schmidt v. Shah,* 696 F. Supp. 2d 44, 58 (D.D.C. 2010) ("[W]here . . . the action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally.").  Mr. Z.'s complaint makes it evident that he is challenging the Commissioner's decision to suspend his benefits.  *See, e.g.*, Compl. at *4 ("I respectfully request a court *review* [*of*] *the decision to terminate my pension* by Social Security Administration, and to overturn that decision by awarding me the full pension from the period from March 2009 until the present day.") (emphasis added).  Construed liberally, it is an inartful attempt to appeal the Commissioner's substantive determination, first made in the July 2012 ALJ Decision, and then referenced in the September 2018 ALJ Decision, that his removal made him ineligible for retirement benefits after January 2009.

At first glance, the fact that the only ALJ decision that substantively examined the removal issue was issued in July 2012—nearly eight years before Mr. Z. filed a complaint in this Court—suggests that this appeal may be untimely.  Appeals of final SSA decisions must be filed within sixty days of receiving notice of the decision.  *See* 20 C.F.R § 404.981; *Johnston v. Colvin*, 221 F. Supp. 3d 18, 20 (D.D.C. 2016).  However, as explained below, there was no final appealable decision regarding the removal issue until January 2020, when the Appeals Council affirmed the September 2018 ALJ Decision and advised Mr. Z., for the first time, of his right to pursue an appeal.

After the July 2012 ALJ Decision was issued, a series of appellate rulings vacating and partially remanding the calculation of benefits issue prevented the ALJ's resolution of the removal issue from becoming final.  If the Appeals Council had declined to review the July 2012 decision, the July 2012 decision would have become a final ruling.  *See Jeffries v. Astrue*, 723 F. Supp. 2d 185, 194 (D.D.C. 2010) (noting that if "the Appeals Council denies review . . . the

ALJ's decisions represents the agency's final decision"); *see also* 20 C.F.R. § 404.981.  If the Appeals Council had affirmed or reversed the July 2012 ALJ Decision in its entirety, the 2014 Appeals Council Decision would have become the operative final decision for purposes of an appeal to district court.  *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) ("If the Appeals Council grants review, its decision (absent a remand to the ALJ) becomes the Secretary's final agency action.").

The Appeals Council took neither action.  Instead, it concluded that evidence supported the ALJ's conclusion that Mr. Z. was ineligible for benefits as of February 2009, but the ALJ committed legal error by failing to address an aspect of the benefit calculation issue.  *See* AR 153.  Consequently, the Appeals Council "vacate[d] the hearing decision and remand[ed]" Mr. Z.'s case back to the ALJ for further consideration of the benefit calculation issue.  AR 151.  As other courts have recognized, "an order of the Appeals Council vacating an ALJ's recommended decision and remanding for further proceedings is ordinarily not an appealable final decision." *Weeks v. Soc. Sec. Admin. Comm'r*, 230 F.3d 6, 8 (1st Cir. 2000); *see also Duda v. Sec'y of Health and Human Servs.,* 834 F.2d 554, 555 (6th Cir. 1987) (concluding Appeals Council ruling was not a final decision when the Appeals Council affirmed only part of the ALJ's decision and remanded for further proceedings); *Culbertson v. Shalala*, 30 F.3d 934, 937 (8th Cir. 1994) ("Appeals Council's decision to remand [Claimant's] case for a new evidentiary hearing" was not an appealable final decision.).  Nothing in the 2014 Appeals Council Decision suggests that this ruling should be construed contrary to that general rule, nor is there any precedent suggesting that Mr. Z. could have appealed the benefits eligibility ruling while remand proceedings were pending regarding the benefits calculation issue.

After the 2014 Appeals Council Decision, the benefits calculation issue was the subject of multiple hearings and rulings by the ALJ and the Appeals Council.  In August 2017, on an appeal of the first remand decision (the February 2015 ALJ Decision), the Appeals Council again vacated the ALJ's ruling and remanded for further proceedings.  *See* AR 192–197.  After that second remand, a different ALJ issued the September 2018 ALJ Decision which was "fully favorable" to Mr. Z. on the benefits calculation issue.  AR 6–16.

Neither the February 2015 nor September 2018 ALJ Decision substantively reexamined the ALJ's earlier decision that Mr. Z. had been removed and was thus ineligible for benefits after 2009.  The ALJ who issued the February 2015 ALJ Decision advised Mr. Z. that the benefits eligibility issue was not before him on remand.  *See* AR 45–46.  The ensuing decision did not address the issue of removal beyond noting in the procedural history that Mr. Z. "was placed under a deportation order and, before he was deported, voluntarily left the country," AR 176, and briefly summarizing the July 2012 ALJ Decision.  *See* AR 181.  The substantive analysis in the September 2018 ALJ Decision also focused solely on the benefits calculation issue.  *See* AR 9–16.  However, in the "Findings" section, the ALJ repeated the ruling from July 2012, concluding that Mr. Z. "was first eligible for benefits as of May 2008.  He was subsequently deported, but remained eligible for benefits for the period from May 2008 through January 2009."  AR 16.

By including the removal issue in its findings, the September 2018 ALJ Decision effectively incorporated by reference the July 2012 ALJ Decision.  *See Wilson v. Comm'r, Soc. Sec. Admin.*, No. 3:15-CV-00691, 2016 WL 1598867, at *5 (D. Or. Apr. 20, 2016) (noting that court could construe ALJ reference to binding nature of prior ruling that was outside the scope of the remand as impliedly incorporating that prior ruling by reference); *see generally Conejo v. Colvin*, No. 10-CV-706, 2014 WL 4264945, at *9 (C.D. Cal. Aug. 27, 2014) ("[I]t is not

improper for an ALJ to incorporate a previous decision and supplement it with a subsequent decision."). When the Appeals Council reviewed Mr. Z.'s November 2018 Request for Review, *see* AR 218–21, it construed the request as an appeal of the September 2018 ALJ Decision. *See* AR 1, 3–4. The September 2018 ALJ Decision became a final appealable decision when the Appeals Council rejected Mr. Z.'s appeal in the January 2020 Appeals Council Ruling. The Appeals Council thus advised Mr. Z. that he had a right to appeal the September 2018 ALJ decision even though he lacked the right to appeal the Appeals Council decision not to reopen prior proceedings. *See* AR 2. Mr. Z. filed his complaint within 60 days of receiving notice of the January 2020 Appeals Council Ruling, and thus has timely and properly raised in this Court a challenge to the ALJ's finding that he was ineligible for benefits due to his removal.

## II.     The ALJ's Decision to Suspend Mr. Z.'s RIB Based on His Removal Was Supported by Substantial Evidence and Consistent with Applicable Law

The undersigned will now consider whether to recommend affirmance or reversal of the Commissioner's substantive determination—first made in the July 2012 ALJ Decision, and then incorporated by reference into the September 2018 ALJ Decision—that Mr. Z. was ineligible for retirement insurance benefits after January 2009 due to his removal. The ALJ's decision to suspend Mr. Z.'s retirement insurance benefits must be upheld "if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d at 999 (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Mr. Z. does not appear to dispute the ALJ's conclusion that removal would render Mr. Z. ineligible for RIB. An individual who has been removed from the United States as deportable under section 237(a) of the INA (8 U.S.C. § 1227(a)), or removed as inadmissible under section

212(a)(6)(A) of the INA (8 U.S.C. § 1182(a)(6)(A)), with some limited exceptions, cannot

receive benefits under the Act.[7]  *See* 42 U.S.C. § 402(n) (§ 202(n) of the Act); 20 C.F.R. §

404.464; *see also Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-CV-0700, 2013 WL

3168141, at *5 (D.D.C. June 21, 2013).  SSA receives monthly data from DHS identifying

individuals who were removed from the United States, and an alert is then produced to flag

within SSA's systems that the claimant has been removed.[8]  *See* POMS RS 02635.010(B)–(C)

(including sample Deportation/Removal Alert).  "Once the Attorney General *notifies* the

Secretary that a person was deported under one of the listed sections of the INA, suspension of

benefits is automatic."  *Marcello v. Bowen*, 803 F.2d 851, 855 (5th Cir. 1986).  Mr. Z. does not

contend that an exception to that rule applies here.[9]  Accordingly, the ALJ did not commit legal

error in concluding that, if Mr. Z was removed, his removal would disqualify him from

continuing to receive retirement insurance benefits.

Mr. Z. takes issue with the ALJ's factual finding that he was removed from the United

States.  Mr. Z. contends that he left voluntarily.  The success of Mr. Z.'s appeal thus turns on

whether substantial evidence supports the ALJ's conclusion.  Although Mr. Z. may want the

---

[7] This prohibition also applies to individuals who were "[d]eported under the provisions
of section 241(a) of the [INA] that were in effect before April 1, 1997."  *See* C.F.R. § 404.464.

[8] Every month, DHS forwards the SSA a notice of removal for every individual that was
removed from the United States during the previous month.  *See* Program Operations Manual
System ("POMS") RS 02635.005(A).  That data is then entered into the SSA's Disability,
Railroad, Alien, and Military Service ("DRAMS") file.  *See* POMS RS 02635.005(B)(1).
Among other things, the data includes each individual's name, "alien registration number," date
of removal, and the grounds for removal through a "final charge code."  POMS RS
02635.005(B)(2).

[9] Individuals who are removed for certain grounds may continue to receive benefits.  *See*
POMS RS 02635.005(D)(1) (outlining exceptions to the termination of benefits based on an
individual's removal).

court to reexamine and make independent factual findings regarding his immigration status at the

time of his departure from the United States, the court cannot "reweigh the evidence" or

substitute its own judgment for that of the SSA.  *Cunningham*, 46 F. Supp. 3d at 32.

### A. Substantial Evidence Supports the ALJ's Conclusion Regarding Mr. Z.'s Removal Status and its Impact on His Eligibility for Benefits

In the July 2012 ALJ Decision, the ALJ made six findings that collectively lead to the

conclusion that Mr. Z.'s benefits should be suspended:

1. The Claimant has been unlawfully present in the United States since 1999.
2. The Claimant was ordered deported by order dated December 7, 2008.
3. The Claimant left the United States in December 2008, and has not returned as a lawfully present alien.
4. The claimant applied for asylee status. This request was denied by the Department of Homeland Security.
5. The Commissioner of Social Security was made aware of the order of deportation.
6. The Claimant is not eligible for retirement insurance benefits under section 202(n) of the Social Security Act.

AR 145.  While some of the ALJ's analysis is lacking in rigor, he weighed the evidence and

sufficiently explained his decision, and drew conclusions that are supported by substantial

evidence in the record.

The ALJ first found that "[i]t was determined that [Mr. Z.'s] presence in this country

became illegal in 1999."  AR 144.  Although no citation was included for this assertion, the

record supports this finding.  Specifically, an internal Report of Contact document dated

February 20, 2009 states that Mr. Z. "was ordered to leave the U.S. voluntarily in 1999."  AR 83.

Further, the Administrative Record includes an Immigration Bond for voluntary departure in Mr.

Z.'s name dated March 22, 1998, which indicates that Mr. Z. would have been a party to

immigration proceedings around that date.  *See* AR 88.  The April 2012 ALJ Hearing testimony

that Mr. Z. did not apply for a visa extension because "he was afraid of being denied," AR 58,

and that he was subject to "[v]oluntary deportation" further supports this finding.  AR 86.  These

records and testimony provide substantial evidence that Mr. Z.'s presence in the United States became illegal in 1999.

Second, the ALJ found that "[t]he evidence establishes that the date of [Mr. Z.'s] deportation order was December 7, 2008." AR 144. Again, record evidence supports this finding despite the ALJ's failure to cite it. Another internal SSA document indicates that "DRAMS shows that [Mr. Z.] was deported on 12/07/2008." AR 93. Mr. Z.'s own statement in an affidavit that he was "obligated" to leave the United States on December 8, 2008 further supports this finding. AR 86. Neither the Notice of Deportation, Alien Deportation Information, DRAMS entry, nor the Deportation/Removal Notice are found in Mr. Z.'s Administrative Record. *See generally* AR. The support for this finding would be stronger if the Administrative Record contained those documents. *See, e.g.*, *Isaraphanich*, 2013 WL 3168141, at *5 (concluding that the plaintiff's Notice of Deportation, Alien Deportation Information, and DRAMS entry provided substantial evidence "that the Department of Justice notified the [SSA] that the Plaintiff was deported"); *Sibisan v. Bowen*, No. 88-CV-497, 1989 WL 281921, at *2 (N.D. Ohio May 31, 1989) (citing the plaintiff's Notice of Deportation as evidence that the Justice Department had notified the SSA that the plaintiff had been removed). Nonetheless, the SSA's internal document reporting what DRAMS shows is adequate to satisfy the substantial evidence standard.

Third, the ALJ found that, following the issuance of Mr. Z.'s deportation order, he "immediately left this country for England . . . and has not returned." AR 144. The SSA's Report of Contact states that Mr. Z. left the United States on December 8, 2008. *See* AR 83. Mr. Z. himself states that "[o]n 8 December 2008 I left the United States." Pl.'s Reply at *2. An individual whose benefits were suspended due to having been removed can regain eligibility

after having been lawfully readmitted.  *See* 42 U.S.C. § 402(n)(1).  There is no evidence in the record that Mr. Z. has been lawfully readmitted, *see generally* AR, nor does Mr. Z. argue that he has.  *See generally* Pl.'s Mot.  Thus substantial evidence supports the ALJ's third finding.

Fourth, the ALJ found that "the record establishes that [Mr. Z.] did in fact seek asylee status from [DHS]. However, this request was denied."  AR 144.  The SSA's Report of Contact states that Mr. Z. "requested asylum but it was denied."  AR 87.  This is further supported by the statement of Mr. Z.'s representative in the April 2012 ALJ Hearing, Abdyl Koprencka, that "[Mr. Z.] applied for asylum, but asylum was denied."  AR 56.  The ALJ's fourth finding is thus supported by substantial evidence.

Fifth, the ALJ found that "the Commissioner of Social Security received notification that [Mr. Z.] was not lawfully present in the United States when he applied for benefits . . . and that he had been deported from this country."  AR 144.  The internal SSA note references Mr. Z.'s DRAMS entry, the presence of which, based on the notification process described above, indicates that DHS notified the SSA that Mr. Z. had been removed.  *See* AR 97.  The note also includes Mr. Z.'s DHS "final charge code" as 1B, which is information that could only be obtained through DHS notification.  *Id.*; *see also* POMS RS 02635.005(B)(2) (final charge code "reflect[s] the specific grounds as determined by DHS under which a person was removed").  Thus there is substantial evidence that DHS notified the SSA that Mr. Z. had been removed.

Finally, the ALJ concluded that Mr. Z. is not eligible for retirement benefits under section 202(n) of the Act.  *See* AR 145.  As discussed above, there is substantial evidence that the SSA notified DHS that Mr. Z. had been removed.  *See Rossello*, 529 F.3d at 1185 ("Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'")

(quoting *Pierce*, 487 U.S. at 565 (internal quotation marks omitted)).  The final charge code is

not one that would exempt a removed individual from the suspension of eligibility for benefits.

*See* POMS RS 02635.001(D)(1) (providing list of final charges codes reflecting grounds for

removal that do not require suspension of benefits).  Thus the ALJ properly applied section

202(n) of the Act in finding that Mr. Z.'s benefits should be suspended.  *See Butler*, 353 F.3d at

999 ("The [SSA's] ultimate determination will not be disturbed if it . . . correctly applies the

relevant legal standards."); *Marcello*, 803 F.2d at 855 (suspension of benefits is automatic when

SSA receives notification that an individual has been removed); POMS RS 02635.001(D)(1).

### B.   *Mr. Z.'s Assertion that He Voluntarily Departed the United States Does Not Require Reversal of the ALJ Rulings*

Mr. Z. contends that his benefits should not be suspended because he was not removed,

and instead left the United States voluntarily.  *See* Compl. at *2.  The ALJ found that there was

no "credible evidence that [Mr. Z.] left the country voluntarily," and that "any private decision to

leave the country voluntarily takes no precedence of the deportation order."  AR 144.  The

Commissioner asserts that this Court is not the proper forum to collaterally attack the accuracy of

DHS's classification of Mr. Z as a person who had been removed, and that there is no evidence

that the ALJ's rulings were incorrect.  *See* Def.'s Mem. at 18; s*ee generally Marcello*, 803 F.2d

at 855 (when considering suspending an individual's benefits under § 202(n) of the Act, the SSA

"does not, and by [its] own policy statements must not, look behind the Notice of Deportation to

the circumstances surrounding its issuance.").

Although the interpretation of immigration laws is within the expertise of DHS and not

SSA, Mr. Z.'s arguments about his voluntary departure are properly before the Court.  The SSA

Program Operation Manual directs that removal data received from DHS should be presumed

accurate *unless* "[o]ther evidence or allegation indicate a formal removal never occurred (e.g.,

the NH claims he/she was given the option of leaving the U.S. voluntarily before or after a removal order was issued)."  POMS RS 02635.015(B).  The ALJ considered and rejected Mr. Z.'s argument that he had voluntarily departed the United States.  *See* AR 144.  The issue is thus within the scope of Mr. Z.'s appeal to this Court.

Voluntary departure is a term of art in immigration law, and refers to a process by which certain individuals may be given an opportunity to leave the United States voluntarily, instead of being subject to a removal order, thereby avoiding the negative consequences of having officially been removed.  *See* 8 U.S.C. § 1229(c).  Individuals given permission to voluntarily depart must do so within 60 or 120 days, depending on the specific nature of their immigration case, and they must do so "at [their] own expense."  *Id.* §§ 1229(c)(a)(2)(A), 1229(c)(b)(2), 1229(c)(a)(1).  An individual who is permitted to voluntarily depart may be required to post a bond, which is returned after furnishing proof that the individual departed from the United States within the specified time period.  *Id.* §§ 1229(c)(a)(3), 1229(c)(b)(3).

Voluntary departure benefits individuals who are permitted to use it because if they depart within the mandated time period they "are not considered by DHS to have been removed," and thus may not have their benefits suspended under section 202(n) of the Act.  POMS RS 02635.015(E)(3).  But if an individual does not depart during the mandated time period, the voluntary departure order generally becomes a removal order, and any subsequent departure is considered a self-removal.  *See* 8 C.F.R. § 1240.26(d) ("Upon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the immigration judge shall also enter an alternate order or removal.").  In addition, individuals who "leave the United States on their own while under a formal order of removal and without having been given the option of 'voluntary departure' are generally considered to have

removed themselves and are subject to suspension under the SSA removal provisions (section 202(n)) as long as they were not ordered removed under grounds that except them from suspension."  POMS RS 02635.015(E)(3); *see also* 8 C.F.R. § 241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed," unless the individual was granted voluntary departure and the mandated time period had not elapsed).

The Administrative Record indicates that Mr. Z. might have been granted voluntary departure in proceedings that occurred around 1998.  *See* AR 88.  On March 22, 1998, Mr. Z. was issued a bond for "voluntary departure."  *Id.*  In addition, Larry Jance testified in the April 2012 ALJ Hearing that Mr. Z. "was deported . . . it was voluntary . . . he paid for his own fare going back, which he placed a bond after the hearing."  AR 60.  But the issuance of the voluntary departure bond, and the fact that he remained in the United States and did not depart within 60 or 120 days of March 22, 1998, supports a finding that Mr. Z.'s presence in the United States became illegal in 1999.  The SSA's records for Mr. Z. include a final charge code from DHS, which indicates that DHS notified SSA that Mr. Z. had been removed.  That supports a finding that, even if Mr. Z. had been granted voluntary departure around 1998, the voluntary departure order had become a removal order by the time Mr. Z. left the country.  If Mr. Z. left the United States while a removal order was active for him, regardless of whether he was physically "deported" or not, suspension of benefits was still appropriate.[10]  *See* POMS RS 02635.015(E)(3).  Accordingly, the ALJ's rejection of Mr. Z.'s voluntary departure arguments comply with the applicable law and are supported by substantial evidence.  *See* AR 144.

---

[10] The March 2014 Appeals Council affirmed the July 2012 ALJ Decision based on similar reasoning.  *See* AR 153 ("[Mr. Z.'s] departure was mandatory, even if it was labeled as 'voluntary.'").

This finding is further supported by Mr. Z.'s own filings, which essentially concede that a removal order was issued.  His complaint asserts that "after I left the country, I discovered that the Immigration Office has recorded my status incorrectly as if I was deported."  Compl. at *2. Mr. Z. further explains that "[t]he Immigration Office puts everyone in the same category of forced deportations, which is wrongly recorded in my case.  I have not had the opportunity to challenge the records that the Immigration Office holds for me."  *Id.*  "Instead of dealing with serious offenders of your immigration laws, DHS goes after a poor person like me."  Pl.'s Reply at *2.  As discussed above, when the SSA receives *notice* from DHS that an individual had been removed, the suspension of that individual's benefits is appropriate.

Accordingly, the undersigned finds that the July 2012 ALJ Decision, which was incorporated by reference into the September 2018 ALJ Decision, relied on substantial evidence and complied with applicable law in finding that Mr. Z.'s RIB should be suspended based on his removal.

### III.   Mr. Z.'s Challenge to the Fact that the Same ALJ Presided Over His Case Twice Has No Merit

Mr. Z. alleges that the Commissioner improperly assigned his case to the same ALJ when it was remanded following the March 2014 Appeals Council Decision.  *See* Compl. at *3.  He claims that "[t]he rules of SSA are that when cases are reviewed, they must be reviewed by a different Administrative Judge from the original one, but in my case it was referred to the same Judge."  *Id.*  This assertion misstates the SSA's assignment protocol.  As the Commissioner correctly points out, "[Appeals Council] remands are assigned to the same ALJ who issued the decision or dismissal unless . . . the case was previously assigned to that ALJ on prior remand from the [Appeals Council] and the ALJ's decision or dismissal after remand is the subject of the new [Appeals Council] remand; or the [Appeals Council] directs that the case be assigned to a

different ALJ."  Hearings, Appeals, and Litigation Law Manual I-2-1-55(D)(6); *see also* Def.'s

Mem. at 16.  The March 2014 Appeals Council Decision remanding Mr. Z.'s case was the first

remand, and the Appeals Council did not direct that the case should be assigned to a different

ALJ.  Remand to the same ALJ who first heard Mr. Z.'s case was thus proper.

### RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY Mr. Z.'s

Motion for Reversal and GRANT the Commissioner's Motion for Affirmance.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the

United States District Court for the District of Columbia, any party who objects to the Report

and Recommendation must file a written objection thereto with the Clerk of this Court within 14

days of the party's receipt of this Report and Recommendation.  The written objections must

specifically identify the portion of the report and/or recommendation to which objection is made,

and the basis for such objections.  The parties are further advised that failure to file timely

objections to the findings and recommendations set forth in this report may waive their right of

appeal from an order of the District Court that adopts such findings and recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  May 11, 2023                                  _____

                                                     ROBIN M. MERIWEATHER
                                                     UNITED STATES MAGISTRATE JUDGE